**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**STEVEN L. HIBSHMAN**                                                                       **PLAINTIFF**

**V.**                      **CASE NO. 1:11CV00003 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven L. Hibshman appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security income ("SSI") under Title XVI of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**      **Background:**

On April 17, 2008, Mr. Hibshman protectively filed for SSI alleging disability beginning the same date due to depression, anxiety, agoraphobia, asthma, high blood pressure, reflux, back and neck pain, and migraine headaches. (Tr. 30, 38, 39, 51, 178) Mr. Hibshman's claims were denied initially and upon reconsideration. (Tr. 69-70) At his request, an Administrative Law Judge ("ALJ")[1] held a hearing on January 27, 2010, at which Mr. Hibshman appeared with his lawyer. (Tr. 26) At the hearing, the ALJ heard testimony from Mr. Hibshman and a vocational expert ("VE"). (Tr. 28-63)

---

[1] The Honorable Harold D. Davis.

The ALJ issued a decision on August 16, 2010, finding that Mr. Hibshman was not disabled for purposes of the Act. (Tr. 7-21) On November 5, 2010, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Hibshman was thirty-seven years old at the time of the hearing. (Tr. 32) He had an eighth-grade education and had worked as a carpenter and lumber yard laborer. (Tr. 32, 35-36, 56) At the time of the hearing, he lived with his wife and children. (Tr. 33)

II.     **Decision of the Administrative Law Judge:**

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

The ALJ found that Mr. Hibshman had not engaged in substantial gainful activity since his alleged onset date. (Tr. 9) And he found that Mr. Hibshman had the following severe impairments: anterior compression T-11, degenerative joint disease of the hands and right knee, hypertension, asthma, depression, and anxiety. (Tr. 9) The ALJ found Mr. Hibshman did not have an impairment or combination of impairments, however, that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.926). (Tr. 9)

The ALJ determined Mr. Hibshman had the residual functional capacity to perform light work, except that he would have to have a sit/stand option, and was limited to jobs that involved simple tasks, simple job instructions, and only incidental contact with the public. (Tr. 12) He found Mr. Hibshman could not perform his past relevant work. (Tr. 20) Relying on the testimony of the VE, he found, however, that Mr. Hibshman had the residual functional capacity to perform jobs that existed in significant numbers in the national economy. (Tr. 20-21)

III.    **Analysis:**

   A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to

support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B. *Global Assessment of Functioning Scores*

Mr. Hibshman's main complaint is that the ALJ did not properly consider his low Global Assessment of Functioning ("GAF") scores that ranged from 45 to 55. *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) ("DSM–IV"), published by the American Psychiatric Association, states that a GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning. (DSM–IV 32) The DSM–IV is, however, a classification of mental disorders that was developed for use in clinical, educational, and research settings. Specific diagnostic criteria included in the DSM–IV are meant to serve as guidelines to augment clinical judgment and are not meant to be used in a cookbook fashion. A GAF score does not have a direct correlation to the severity requirements in mental disorders listings. 65 Fed.Reg. 50746, 50764–65 (2000).

Here, the ALJ acknowledged Mr. Hibshman's GAF scores but explained why they were not controlling. (Tr. 15) As the ALJ noted, a GAF score of 45 was assigned to Mr. Hibshman in a treatment plan that was electronically co-signed by Terry Brown, D.O.,

and dated January 3, 2008. (Tr. 242-44) During his evaluation, Mr. Hibshman admitted that he had not been participating in individual therapy or case management since November, 2006. (Tr. 243) Further, progress notes from October of 2007, December of 2007, and March of 2008, indicate that Mr. Hibshman was getting along well with others, including his children. (Tr. 15, 238-41, 248-51) A progress note from August of 2008, notes that Mr. Hibshman had experienced a real change with medication and was getting out in public. (Tr. 15, 300-301)

As the ALJ noted, throughout the records from Health Resources of Arkansas, Mr. Hibshman was assigned GAF scores of differing levels, but only two of these scores were assigned by an acceptable medical source as defined in the Social Security Regulations. 20 C.F.R. § 416.913(a); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (licensed social worker not deemed an acceptable medical source). Too, his GAF score of 45 assigned by Dr. Brown must be considered together with the score assigned by Nancy A. Bunting, Ph.D. Dr. Bunting assessed Mr. Hibshman at 50-60 on the GAF scale after examining and testing him during a consultative examination on March 19, 2010. (Tr. 321) The sixteen other GAF scores for Mr. Hibshman, that were not assigned by an acceptable medical source, ranged from 45 to 65. (Tr. 237, 239, 241-42, 246-47, 249-50, 252-53, 299, 301-02, 306-11, 321)

The ALJ did not err in his assessment of the GAF scores. He considered these scores, along with the other evidence in the record, but did not err by not giving the

5

scores greater weight. See *Jones v. Astrue*, 619 F.3d 963, 972-74 (8th Cir. 2010) (ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it).

    C.    *Residual Functional Capacity*

Mr. Hibshman claims the ALJ's determination of his residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ did not properly account for his mental impairments. (#13 at p. 10) The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted). A claimant's residual functional capacity is a medical question, and at least some medical evidence must support the ALJ's RFC determination. *Id*. The ALJ may reject the opinion of any medical expert that is inconsistent with the medical record as a whole. *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011)(citing *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008)).

Here, the ALJ found that Mr. Hibshman was capable of performing light work,[3] except that he had to have a sit/stand option. Additionally, the ALJ found that, because of

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when in involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

Mr. Hibshman's mental conditions, he was limited to work involving simple tasks, simple job instructions, and only incidental contact with the public.  (Tr. 12)

Mr. Hibshman does not dispute that he was capable of light work with a sit/stand option, but claims the ALJ did not properly consider his mental impairments when assessing his RFC.  Specifically, Mr. Hibshman argues that his treatment records from Health Resources of Arkansas, and specifically the GAF scores assigned to him, indicate that he had "very substantial limitations."  (Docket entry #13 at p. 12)

Again, the ALJ appropriately considered and discussed Mr. Hibshman's GAF scores.  The ALJ also considered and discussed, at some length, the treatment records from Health Resources of Arkansas.  (Tr. 15-16, 18-19)  Progress notes from Health Resources indicate that Mr. Hibshman was getting along well with others, including his children, and that he was getting out more when he was on prescribed medication.  (Tr. 237-38, 240, 245, 249, 300-02)  On May 7, 2009, Mr. Hibshman reported that he only came to therapy because "they are making me"; and a note from the following week indicates he had reduced his Xanax intake because his anxiety was controlled.  (Tr. 305-307)

The ALJ also considered reports from two separate consultative psychological examinations of Mr. Hibshman performed by Dr. Bunting.  On her first examination of Mr. Hibshman on July 9, 2008, Dr. Bunting diagnosed panic disorder without agoraphobia and major depressive disorder.  She stated that a number of symptoms

required to meet the criteria for these two diagnoses were "not really there," because the symptoms "seem to be presently ameliorated by his medications." (Tr. 274) She stated that during the examination Mr. Hibshman was able to communicate and interact in a socially adequate manner, but that he had a limited capacity to cope with typical cognitive demands and to sustain concentration. (Tr. 275) Dr. Bunting also noted that he was "guarded" and "appeared to give only minimal level of effort." She stated that during the examination, he displayed a "bad attitude" and "a willingness to exaggerate symptoms." (Tr. 274-75)

As the ALJ notes, Dr. Bunting reported that the exaggeration of symptoms, poor effort, and poor cooperation persisted at the second consultative examination. (Tr. 18, 322-23) Dr. Bunting administered the Minnesota Multiphasic Personality Inventory-2. She noted the profile was invalid, however, because Mr. Hibshman was responding to questions in "random fashion" and stopped paying attention, resulting in what she termed a "fake-bad" profile. (Tr. 321)

She also administered a Computerized Assessment of Response Bias ("CARB") test which is given when a person is believed to be malingering. See *Johnson v. Barnhart*, 390 F.3d 1067, 1069 (8th Cir. 2004). The results from the CARB test showed very poor effort and were consistent with those of examinees who are consciously exaggerating the extent and nature of their symptoms or impairments. (Tr. 321) Finally, Dr. Bunting noted that Mr. Hibshman gave "minimal effort on the Wechsler Adult

8

Intelligence Scale-III ("WAIS-III") examination which resulted in a full scale IQ of 71. (Tr. 321-22)

Dr. Bunting concluded that Mr. Hibshman: (1) was able to communicate and interact in a socially adequate manner; (2) was able to communicate in an intelligible and effective manner; (3) had the capacity to cope with the typical mental/cognitive demands of basic work-like tasks (noting his score on the IQ test was "very likely an underestimation of his abilities"); (4) had some ability to attend and sustain concentration on basic tasks; (5) was able to sustain his persistence during the testing session and interview; and (6) had some ability to complete work-like tasks within an acceptable time frame. (Tr. 322)

Mr. Hibshman argues that the ALJ failed to properly consider the opinions and findings of Joan Shepard, L.P.C., who completed a mental residual functional capacity questionnaire. In her response to the questionnaire, Ms. Shepard concluded that Mr. Hibshman had no useful ability to function in 18 of 25 areas used for evaluating an individual's mental ability for unskilled work. (Tr. 314-15) Mr. Hibshman's reliance on Ms. Shepard's opinion is misplaced.

First, Ms. Shepard is a licensed counselor, not a licensed physician or psychologist. Under 20 C.F.R. § 416.913(a), a licensed or certified psychologist qualifies as an "acceptable medical source" who can provide evidence to establish a medically determinable impairment. The ALJ may consider "other sources" such as therapists and

counselors to show the severity of an impairment and how it affects the claimant's ability to work, but not to establish the impairment.  See 20 C.F.R. § 416.913(d).

Second, the ALJ may reject any opinion that is inconsistent with the medical record as a whole.  *Martise v. Astrue*, 641 F.3d at 909, 926 (8th Cir. 2011) (treating physician's opinion properly discounted when inconsistent with treatment notes or with medical evidence as a whole).  In this case, Ms. Shepard's opinion is not consistent with the treatment records from Health Resources of Arkansas or with the opinions of Dr. Bunting.

There is substantial evidence to support the ALJ's conclusion that Mr. Hibshman had the residual functional capacity for light work with a sit/stand option where the work is limited to jobs that involve simple tasks, simple job instructions, and only incidental contact with the public.

### IV.   Conclusion:

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Steven Hibshman was not disabled within the meaning of the Act.  Accordingly, his appeal is DENIED, and the Clerk is directed to close the case, this 6th day of April, 2012.

_____
UNITED STATES MAGISTRATE JUDGE